```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**TEDDY BRAGG and IMOGENE BRAGG**

    Plaintiffs

v.                              Civil Action No.: 2:04-1280

**KELLOGG BROWN & ROOT, INC.**

    Defendant

## MEMORANDUM ORDER AND OPINION

Pending before the court is the motion of defendant Kellogg Brown & Root, Inc. ("Kellogg"), filed March 24, 2005, seeking to compel this action to arbitration pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. §§ 1, _et seq._, to which plaintiffs have not responded.

I.

According to the allegations of plaintiffs' complaint, plaintiff Teddy Bragg was employed by Kellogg to perform work at Dupont's plant in Belle, West Virginia. Compl. at ¶ 3. Pursuant to his employment contract with Kellogg, he and his wife, plaintiff Imogene Bragg, were entitled to receive health insurance. _Id._ at ¶ 5. On December 31, 2001, Bragg was laid

off.  Id. at ¶ 4.  Subsequent to the lay off, Bragg sought an extension of health insurance benefits for his wife as mandated by the Comprehensive Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. § 1166 ("COBRA").  Id. at ¶ 7.

Despite making all the requisite premium payments, Kellogg terminated Ms. Bragg's COBRA coverage seven months early for no reason.  Ms. Bragg incurred approximately $35,000 in medical expenses which the plaintiffs contend would have been otherwise covered by her COBRA benefits.  Plaintiffs assert that the termination of benefits was in retaliation for an action filed by him against Kellogg concerning his termination.

That prior action was commenced on May 24, 2002, in the Circuit Court of Kanawha County, West Virginia, and involved allegations of age discrimination.  On August 12, 2002, Kellogg filed an action here against Bragg, seeking to stay the state action and compel the parties' dispute to arbitration.  Kellogg contended that Bragg had signed an agreement requiring binding arbitration of any disputes arising out of his employment.  By order entered March 19, 2003, the court granted Kellogg's motion, enforcing a one-page arbitration agreement which Bragg signed as a condition of employment.  Kellogg, Brown & Root v. Bragg, 250 F. Supp.2d 664, 669 (S.D. W. Va. 2003).  That written arbitration

agreement provides that:

> I also agree that I will be bound by and accept as a condition of employment, the terms of the Brown & Root Dispute Resolution [(DRP)], which are herein incorporated by reference. I understand the [DRP] requires as its last step the binding arbitration of all employment.

Id. at 665.

In this action, Kellogg has moved to compel arbitration, contending that the current dispute also arises from Bragg's employment. In support of its motion to compel arbitration, Kellogg has submitted the affidavit of Robert Hayter, Senior Counsel of in the Halliburton Law Department, attesting that Exhibit 1 to its motion is a true and accurate handbook containing "the summary plan description for the health and group benefits available to Halliburton's craft employees in 2002, known as the 'Craft Plan.'" Hayter Aff. at ¶ 3. Hayter further asserts that:

> The Craft Plan is the health plan in which Teddy Bragg, his spouse, and dependents were eligible to participate during his employment, and following his employment if he so elected under the provision of the Consolidated Omnibus Budget Reconciliation Act.

Id. at ¶ 4. Under the Craft Plan, employees are offered COBRA benefits for 18 months if an employee is laid off.[1]  Mot. Compel

---

[1] An employee could also seek coverage for a dependent under the health plan. Mot. Compel at Ex. 1 (Craft Plan at p. 6).

3

at Ex. 1 (Craft Plan at pp. 12-13).

The Craft Plan includes a summary plan description which informs participants about their rights.  The summary plan description contains the following provision entitled "Dispute Resolution Program" that provides:

> You may appeal a denied claim to the Plan Administrator.  However, any further appeals must be handled in accordance with the Halliburton Dispute Resolution Program which includes binding arbitration as its final step. . . . The Dispute Resolution Program applies to any relief you or anyone claiming on your behalf may seek through the court system.
>
> All current and former employees are eligible to use the Dispute Resolution Program.

Id. at p. 100.

Kellogg also attaches the affidavit of Melinda Miner, an associate ombudsman of the Halliburton Dispute Resolution Program, verifying certain documents as the Halliburton Dispute Resolution Program Plan and Rules and the Halliburton Dispute Resolution Brochure.  According to the Halliburton Dispute Resolution Program, a dispute is defined as follows:

> "Dispute" means all legal and equitable claims, demands, and controversies of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law, between persons bound by the Plan or by an agreement to resolve Disputes under the Plan, or between a person by the Plan and a person or entity otherwise entitled to its benefits, including, but not limited to any matters with respect to: . . . .

>    3. employee benefits or incidents of employment with
>    the company:
>
>    4. any other matter related to or concerning the
>    relationship between the Employee and the Company
>    including, by way of example and without limitations
>    allegations of: . . . status, claim or membership with
>    regard to any employee benefit plan.

Id. at Ex. B (Program at p. 2).  The program is binding on the parties and conclusively resolves by binding arbitration all disputes not otherwise resolved.  Id. at p. 4.  The program documents also state that:

>    Employment or continued employment after the Effective
>    Date of this Plan constitutes consent by both the
>    Employee and the Company to be bound by this Plan, both
>    during employment and after termination of employment.

Id. at p. 7.  The arbitration process is initiated by written request and the arbitrators are provided through the American Arbitration Association, the Judicial Arbitration and Mediation Services and the Center for Public Resources.  It appears that the party requesting arbitration bears the burden of paying the arbitration fee.

   Kellogg contends that this action, inasmuch as it involves a dispute over benefits offered through the Craft Plan, is subject to arbitration.  Kellogg adds that even the claims of Ms. Bragg, a non-signatory to any arbitration agreement, are susceptible to arbitration inasmuch as she seeks to enforce a

right to benefits under the Craft Plan which contains a binding dispute resolution provision. Plaintiffs have filed no opposition to the motion.

II.

The Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. ("FAA") was enacted "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 31 (1991). As such, the FAA represents a strong federal policy in favor of arbitration. Sydnor v. Conseco Financial Servicing Corp., 252 F.3d 302, 305 (4th Cir. 2001). In Adkins v. Labor Ready, Inc., 303 F.3d 496 (4th Cir. 2002), the court stated:

> In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

Id. at 500-01 (quoting Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991)). "The FAA mandates that if parties execute a valid agreement to arbitrate disputes, a federal court must

compel arbitration." Syndor, 252 F.3d at 305.

Although the FAA represents a strong federal policy favoring arbitration, the court is the gatekeeper of whether the parties entered into a valid arbitration agreement. Hooters of America, Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999). The Fourth Circuit has defined the parameters of this inquiry as follows:

> The judicial inquiry, while highly circumscribed, is not focused solely on an examination for contractual formation defects such as lack of mutual assent and want of consideration. Courts also can investigate the existence of "such grounds as exist at law or in equity for the revocation of any contract." However, the grounds for revocation must relate specifically to the arbitration clause and not just to the contract as a whole.

Id. (citations omitted). Ordinary state-law principles that govern the formation of contracts guide the court's determination of whether the parties entered into a valid agreement to arbitrate. Syndor, 252 F.3d at 305.

The court in Bragg previously determined that Kellogg and Bragg entered into a valid arbitration agreement as a condition of his employment. Moreover, the specific benefits which plaintiffs contend were wrongfully denied vested through the Craft Plan, an ERISA plan offered incident to Bragg's employment with Kellogg in which he participated. The Craft Plan

7

specifically states that any disputes concerning benefits would be subject to the Halliburton Dispute Resolution Program. Plaintiffs have offered no argument in opposition to a finding that a valid arbitration agreement between Bragg and Kellogg exists. The court, having reviewed Kellogg's submission of documents concerning the scope of the Halliburton Dispute Resolution Program, has found no evidence on the face of those documents to establish, nor does plaintiff suggest, that either the agreement or the program is unconscionable or otherwise improper.

Although plaintiffs have posed no opposition to the motion, it is noted that Ms. Bragg is not a signatory to any arbitration agreement. This is not dispositive inasmuch as a party may agree to arbitration by means other than personally signing a contract. <u>International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH</u>, 206 F.3d 411, 416 (4th Cir. 2000). One such means is the doctrine of equitable estoppel which the Fourth Circuit has held estops a non-signatory "from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." <u>Id.</u> at 418.

The doctrine of equitable estoppel would foreclose any argument that Ms. Bragg, a non-signatory, should not be bound to arbitrate this dispute. Ms. Bragg seeks to enforce and collect certain COBRA benefits made available to her through the Craft Plan. The Craft Plan specifically contains a provision requiring disputes to be arbitrated and this dispute concerning the nonpayment of COBRA benefits falls within the scope of that provision. Consequently, Ms. Bragg may not seek to enforce benefits due under the Craft Plan while ignoring the Craft Plan's requirement of binding arbitration. Ms. Bragg has offered no argument to suggest otherwise.

### III.

For the reasons set forth, it is accordingly ORDERED that:

1. The motion of defendant Kellogg, Brown & Root, Inc., seeking to compel arbitration of this action be, and it hereby is, granted.

2. The parties shall proceed to arbitration in accordance with the applicable terms of the Halliburton Dispute Resolution Program.

      3.   This action is stayed and placed on the inactive docket, pending completion of the required arbitration.

      4.   The parties shall file a written status report on November 1, 2005, and thereafter on May 1 and November 1 of each subsequent year until the arbitration is complete.

      5.   Either party may seek reinstatement following arbitration to obtain confirmation or other review, according to the provisions of the Federal Arbitration Act, of any arbitral award.

      The Clerk is directed to forward copies of this written opinion to all counsel of record.

      DATED: July 11, 2005

      _____
John T. Copenhaver, Jr.
United States District Judge